UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>   v.<br><br>JAMES ISOM COLLINS,<br><br>                  Defendant. | No. CR-05-2097-AAM<br><br>**PRE-TRIAL ORDER** |

A pre-trial conference was held in this matter on December 13, 2005. Shawn Anderson, Esq., Assistant U.S. Attorney, appeared for the plaintiff. Anne Walstrom, Esq., Assistant Federal Defender, appeared for the defendant. An evidentiary hearing was held in conjunction with defendant's Motion To Dismiss and Motion To Suppress. Washington State Patrol (WSP) Trooper Robert Morris, Sunnyside Police Officers Oliver Hernandez and Larry Scherer, Alcohol, Tobacco and Firearms (ATF) Agent Miller, and Cole Rojan, an investigator with the Federal Defenders, testified. Following consideration of the evidence and the argument of counsel, the court is prepared to rule on those motions, as well as the other pre-trial motions filed by defendant.

**I. BACKGROUND**

Defendant is charged in a two count superseding indictment as follows:

COUNT 1

On or about July 17, 2005, in Yakima County, in the Eastern District of Washington, the defendant, JAMES ISOM COLLINS; having

**PRE-TRIAL ORDER-**            **1**

been convicted of the crime of Possession of an Unlawful Firearm on August 24, 2004, in Grant County Superior Court; cause number 04-1-00398-1, a crime punishable by imprisonment for a term of one year or more, did knowingly possess in and affecting interstate commerce, a firearm, to wit: a .22 caliber High Standard pistol, serial number 68512, all in violation of Title 18, United States Code, Section 922(g)(1) and 924(a)(2).

COUNT 2

On or about July 17, 2005, in Yakima County, in the Eastern District of Washington, the defendant, JAMES ISOM COLLINS, did knowingly possess a firearm, to wit: a .22 caliber High Standard pistol, serial number 68512, with an attached silencer, that was not registered to him in the National Firearms Registration and Transfer Record, all in violation of Title 26 United States Code, Section 5861(d).

## II. DISCUSSION

### A. Defendant's Motion To Dismiss (Ct. Rec. 18)

Defendant moves to dismiss the superseding indictment because the bag in which the firearm was located, the bag's "contents," and the vehicle in which the bag and gun were discovered, are not available. The government does not dispute that the bag, any contents therein, and the car are not available.

For destruction of evidence to constitute a denial of due process and a basis for dismissal, bad faith on the part of the police is necessary. *Arizona v. Youngblood*, 488 U.S. 51, 57-58, 109 S.Ct. 333 (1988). "Unless a criminal defendant can demonstrate 'bad faith on the part of the police,' the failure of the police to preserve 'potentially useful evidence' does not constitute a denial of due process of law." *United States v. Rambo*, 74 F.3d 948, 954 (9th Cir. 1996), quoting *Youngblood*, 488 U.S. at 58. "Bad faith" turns on whether the police had "knowledge of the apparent exculpatory evidence at the time it was lost or destroyed." *United States v. Cooper*, 983 F.2d 928, 931 (1993). "Even if [defendant] could demonstrate bad faith, in order for the due process clause to be implicated, the evidence that was lost 'must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *United States v. Patterson*, 292 F.3d 615, 628 (9th Cir. 2002).

**PRE-TRIAL ORDER-            2**

Defendant asserts that "[t]he location of the bag in the car, underneath the passenger's legs and not [defendant's] legs, is . . . exculpatory information." It is undisputed that the bag was discovered underneath the passenger's legs and as such, having the vehicle to examine and take pictures of would not add appreciably to the undisputed and potentially exculpatory fact that the bag was found underneath the passenger's legs.

According to defendant, "[t]he items in the bag will obviously help establish who owns the bag or who was using the bag." While none of the police reports indicate there were any items in the bag, it cannot be ruled out that there were such items, or that there was some kind of identification in or on the bag. Nevertheless, assuming there were items in the bag, those items, as well as the bag, did not possess an exculpatory value that would have been apparent to the law enforcement officers with regard to either of the firearm charges. The critical inquiry with regard to those charges is "possession," not "ownership" or "use." "A person has possession of something if the person knows of its presence and has physical control of it, or knows of its presence and has the power and intention to control it." Ninth Circuit Model Criminal Jury Instruction 3.18.

There is no dispute that defendant was in the vehicle in which this weapon was found. Indeed, he was driving the vehicle and the gun was found in near proximity to where the driver would have been seated. The fact the gun may have been owned by someone else (i.e., one of the other persons in the vehicle), does not preclude defendant's possession of the gun. Moreover, "joint possession" is a possibility: "More than one person can be in possession of something if each knows of its presence and has the power and intention to control it." Ninth Circuit Model Criminal Jury Instruction 3.18. The male passenger in the vehicle (Norberto Guerrero), also a convicted felon, could have "possessed" the gun, as could have the female passenger who was in the back seat.

The bag and whatever items may have been therein are not "crucial to establishing [defendant's] guilt," *United States v. Heiden*, 508 F.2d 898, 903 (9th Cir. 1974), and therefore, the exculpatory value of the bag and any items therein would not have been apparent to the officers. See also *Mitchell v. Goldsmith*, 878 F.2d 319, 322 (9th Cir. 1989)(police did not know

**PRE-TRIAL ORDER-**           3

semen sample would have exculpated Mitchell when they failed to perform further testing and when they failed to refrigerate the sample).[1]  Even without the bag and any items contained therein, defendant still has a reasonable opportunity for establishing reasonable doubt as to his knowing possession of the firearm by virtue of the fact there were three people in the vehicle and the firearm was located in a bag beneath the feet of defendant's male passenger (Guerrero).

In sum, there is no evidence that the car, the bag and any items in the bag were intentionally concealed and/or destroyed. At most, these items were lost or inadvertently destroyed. Furthermore, the potentially exculpatory value of these things would not have been apparent to the officers, and the defendant is not unfairly prejudiced by their loss. Accordingly, defendant's Motion To Dismiss (Ct. Rec. 18) is **DENIED**.

**Defendant's Motion to Suppress (Ct. Rec. 15)**

There is no dispute that there was founded suspicion for the traffic stop in this case. Trooper Morris observed that the car which defendant was driving did not have a functioning rear license plate as required by state law. *United States v. Gutierrez-Mederos*, 965 F.2d 800, 803 (9th Cir. 1992). A traffic stop must last no longer than necessary to effectuate the purpose of the stop. *United States v. Mondello*, 927 F.2d 1463, 1471 (9th Cir. 1991). As is apparent from the recitation of the facts below, this traffic stop did not last any longer than necessary and was still ongoing when the defendant was placed under arrest and the firearm was discovered.

Trooper Morris indicates he advised defendant of the reason for the stop and asked for his driver's license. The defendant told the trooper his license was in the trunk. When defendant exited the vehicle, the trooper detected a faint odor of liquor and so he had the defendant perform some field sobriety tests. While Trooper Morris was at the rear of the vehicle with the defendant, Officer Scherer of the Sunnyside Police Department arrived. Trooper Morris proceeded to run a driver's check on the defendant and was advised the defendant did not have a

---

[1] *Cooper* is distinguishable because the potentially exculpatory value of the laboratory equipment was apparent to law enforcement officers. 983 F.2d at 931.

**PRE-TRIAL ORDER-            4**

driver's license.  Officer Hernandez, also of the Sunnyside Police Department, then arrived on the scene.[2]  Morris says he returned to the vehicle which defendant was driving to verify the VIN (vehicle identification number) he had received from WSP communications.  Morris says he then overheard Hernandez ordering the passengers out of the vehicle and was advised by Hernandez that he "saw the butt of a gun sticking out of a black bag on the floor where the passenger was seated."  Morris then took the defendant into custody for "No Valid Operator's License Without I.D."[3]  At the time this arrest was made (1:36 a.m., according to Trooper Morris), the firearm had not yet been "seized," although it had been discovered.

Officer Hernandez did not need to see the firearm to warrant his ordering the passengers out of the vehicle, although that certainly offered an additional compelling reason for him to do so.  In *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882 (1997), the U.S. Supreme Court held an officer making a traffic stop may order passengers to get out of the car pending completion of the stop.[4]  This is justified because of the concern for officer safety.  According to the Supreme Court:

> Danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car.  While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passengers is minimal.

*Id*. at 415-16.

"Plain view" can be the basis for a warrantless seizure if the property seized was observed: 1) from a vantage point where the viewing officer had the lawful right to be; and 2) the

---

[2] Trooper Morris says he made the stop at 1:15 a.m.  Officer Hernandez indicates he arrived on the scene at 1:25 a.m., pursuant to a "call out" from Officer Scherer.  In his report, Officer Scherer indicates he arrived at the scene at 2:15 a.m., but this must be a mistake since all of the officers agree that Trooper Morris and Officer Scherer were already at the scene when Officer Hernandez arrived.

[3] At the evidentiary hearing, Trooper Morris testified that simultaneous with the discovery of the firearm or shortly thereafter, the defendant was arrested.

[4] While Hernandez did not make the initial stop, he assisted with the stop subsequently.

**PRE-TRIAL ORDER-**           **5**

evidentiary value of the item was "immediately apparent." *Horton v. California*, 496 U.S. 128, 136-37, 110 S.Ct. 2301 (1990). There is no dispute that Officer Hernandez observed the firearm from a vantage point where he had a lawful right to be.[5] The second criterion is met where the officer had probable cause to associate the property with criminal activity. *United States v. Hudson*, 100 F.3d 1409, 1421 (9th Cir. 1996), citing *Texas v. Brown*, 460 U.S. 730, 741-42, 103 S.Ct. 1535 (1983). Defendant contends that although the firearm was in "plain view," considering the nature of the stop- a traffic stop- the officers did not have probable cause to associate the firearm with criminal activity. In their testimony, Trooper Morris and Officers Hernandez and Scherer agree that at the time the firearm was seized and removed from the vehicle, none of them were aware that defendant was a convicted felon (or that the male passenger, Guerrero, was a convicted felon).[6] Trooper Morris acknowledges he did not run a criminal history check (a "Triple I") on the defendant until after the seizure of the firearm. For this reason, defendant contends the seizure of the firearm was illegal and the firearm must be suppressed.

---

[5] In his report, Hernandez states that when he arrived at the scene, he looked into the vehicle with a flashlight and could see a male (Norberto Guerrero) in the front passenger seat and a female in the backseat. Then, according to the report of Hernandez:

> I walked around to the passenger side and asked Norberto if he had any ID and he rolled down the window and told me "no." As I spoke to him I could see that his legs were strattling (sic) a black nylon bag. I asked him if that was his bag and Norberto said "I know it isn't mine" and had his hands up as he told me. I could also see a black plastic pistol type grip that was on the far side of Beto. I asked Beto to step out of the vehicle and to place his hands on the hood of the vehicle for a pat down. After patting him down, I told Beto to relax and he remained at the front of the car, when I went back to the vehicle and could see in plain view the black handle of a small calibur (sic) semi-automatic pistol lying just inside the bag.

[6] None of the officers contend that because of the type of firearm involved (with a homemade silencer), the incriminating nature of the firearm was immediately apparent.

**PRE-TRIAL ORDER-                6**

1  The government contends that seizure of the firearm was justified on the basis of "officer safety" alone. There is authority that a temporary seizure of a firearm for safety purposes is permissible, and if during that time it becomes known that the firearm is contraband (i.e., possessed by a convicted felon), it can be permanently seized for the purposes of prosecution. *United States v. Robinson*, 756 F.2d 56, 60 (8th Cir. 1985), citing *United States v. Malachesen*, 597 F.2d 1232, 1234-35 (8th Cir. 1979) (While incriminating nature of gun not immediately apparent, the seizure, unloading and retention of the gun was a reasonable precaution to assure the safety of all persons on the premises during the search, and when officers learned of defendant's prior conviction, the temporarily seized handgun became contraband and subject to seizure as an illegal weapon possessed by a felon). This court does not believe "officer safety" justified seizure of the firearm in the case at bar. At the time of the seizure, the officers acknowledged that defendant and both of his passengers were out of the vehicle and secured. Both the defendant and his male passenger had been handcuffed and placed in the back of patrol cars (defendant in the back of the car of Trooper Morris, and Norberto Guerrero in the back of the car of Officer Hernandez).

At the same time that the firearm was seized by Officer Scherer, he also commenced a search of the vehicle which resulted in him locating some marijuana pipes and a small amount of marijuana. A warrantless search of a vehicle incident to a lawful arrest is generally permissible. *United States v. Tank*, 200 F.3d 627, 631 (9th Cir. 2000). That exception appears unavailing here, however, because the fact remains that the firearm had already been seized by the time the officers learned that defendant was a convicted felon. Nevertheless, the fact defendant had already been arrested is significant.[7]

---

[7] At the evidentiary hearing, defendant's counsel argued for the first time that the arrest for "No Valid Operator's License Without I.D." was not authorized under Washington State law.
   Pursuant to RCW 10.31.100, "[a] police officer may arrest a person without a warrant for committing a misdemeanor or a gross misdemeanor only when the offense is committed in the presence of the officer, except as provided in subsections (1) through (10) of this section." Subsection (3) lists several traffic violations for which an officer is authorized to make an arrest provided he has probable cause and even though the violation is not committed in his presence.

**PRE-TRIAL ORDER-**          7

Certainly, the mere fact defendant was arrested for not having a valid operator's license did not give the officers probable cause to seize the firearm as contraband. However, the arrest certainly justified Trooper Morris in conducting a criminal history check shortly thereafter which revealed the defendant was a convicted felon. Because of the arrest, under no circumstances was the defendant going to be able to drive away from the scene in the vehicle in which the firearm was located. Nor would the male passenger have been able to drive the vehicle away with the firearm inside as he was arrested by Officer Hernandez after Hernandez discovered there were outstanding warrants for his arrest. According to the report of Trooper Morris, the female passenger stated she had just met the defendant a few minutes earlier at a friend's house and that the defendant was simply giving her a ride. This female passenger, who had no ownership or possessory interest in the vehicle, also was not going to drive away with the vehicle and the firearm inside. Even had the firearm not been seized and the vehicle searched, the vehicle would have been impounded and its contents inventoried, including the firearm. By the time of an inventory, the defendant would have already been booked and certainly no later than that time, it would have been revealed that the defendant was a convicted felon.[8]

An inventory search does not require a warrant and does not require probable cause. "[I]nventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine*, 479 U.S. 367. 372, 107 S.Ct. 738 (1987). "Inventory searches have been held constitutional if they are conducted in accordance with the standard procedures of the agency conducting the search or come under another exception to the Fourth

---

"No Valid Operator's License Without I.D." is not one of the listed offenses. This court believes that under the circumstances here, the "No Valid Operator's License Without I.D." offense was committed in the presence of Trooper Morris since it was at the scene that he learned the defendant was driving a vehicle without a valid operator's license and without any other form of valid identification. Accordingly, the arrest was authorized under RCW 10.31.100.

[8] The vehicle was in fact impounded and its contents inventoried, but of course, the firearm and the other contraband had already been removed. Officer Scherer testified that he created an impound sheet/inventory list.

**PRE-TRIAL ORDER-**           **8**

Amendment warrant requirement." *United States v. Ramos-Oseguera*, 120 F.3d 1028, 1036 (9th Cir. 1997). In sum, if the firearm had not been seized prior to impoundment of the vehicle, it would have been seized subsequent to impoundment pursuant to an inventory search and by that time, a criminal history check of the defendant would no doubt have revealed his prior felonies. Of course, Trooper Morris and the other officers discovered that the defendant was a convicted felon shortly after the defendant had been placed under arrest and while still at the scene, and well before the vehicle was impounded. Because Officer Hernandez could see the firearm from a lawful vantage point, the officers knew of its existence before it was actually seized.

The inevitable discovery doctrine acts as an exception to the to exclusionary rule and permits the admission of otherwise excluded evidence "if the government can prove that the evidence would have been obtained inevitably and therefore, would have been admitted regardless of any overreaching by the police . . . ." *United States v. Reilly*, 224 F.3d 986, 994 (9th Cir. 2000), quoting *Nix v. Williams*, 467 U.S. 431, 447, 104 S.Ct. 2501 (1984). It must be established by a preponderance of the evidence that the evidence in question would have been uncovered by officers in carrying out routine procedures. *Id*. The inevitable discovery doctrine applies only when the fact that makes the discovery inevitable is born of circumstances other than those brought to light by the illegal search itself. *Id*. at 995.

Here, assuming the seizure of the firearm was unlawful because it occurred prior to the officers having knowledge that defendant was a convicted felon, this court believes the inevitable discovery doctrine still permits the firearm to be used as evidence against the defendant. First of all, the officers knew of the firearm's existence before it was seized. Secondly, by virtue of his arrest for not having a valid operator's license, a criminal history check of the defendant (a "routine procedure" which does not require a warrant) was going to be run at some point no later than the defendant's booking, whether or not the firearm was seized at the scene. Thirdly, even had the firearm not been seized at the scene, it would have been seized subsequently following impoundment of the vehicle and the conducting of an inventory search (another "routine procedure" which usually does not require a warrant). The fact which make the discovery of defendant's felony record inevitable is born of circumstances (his arrest for not

**PRE-TRIAL ORDER-            9**

having a valid operator's license) other than those brought to light by the seizure of the firearm. And, in this regard, it must be emphasized again that even before the firearm was seized, the officers knew of its existence, the defendant was already under arrest, and no matter what, the vehicle was going to be impounded by the police with or without the firearm inside. The "seizure" of the firearm did not materially change the situation.

The court does not believe it is appropriate to narrowly focus on the fact that the firearm was seized before the officers knew the defendant was a convicted felon and based on that fact alone, suppress the firearm. Even if the seizure was somehow technically unlawful, for the reasons set forth above, suppression of the firearm is not warranted based on the totality of the circumstances in this particular case.

Accordingly, defendant's Motion To Suppress (Ct. Rec. 15) is **DENIED**.

**Defendant's Motion For Discovery (Ct. Rec. 25)**

Defendant requests disclosure or production of eight separate categories of evidence from the government.

The government's response is that this is an open file case and that it has disclosed everything it has, will provide anything additional which comes into its possession, and will provide a summary of anticipated expert testimony "prior to the testimony of any expert called at trial."

The defendant has filed a reply in which he takes issue with the government's representation that it will provide a summary of anticipated expert testimony "prior to the testimony of any expert at trial." Defendant contends the government apparently intends to wait until trial and just before the expert testifies before providing the summary of anticipated testimony. It is not clear if that is what the government intends, but if it is, the court agrees it would be improper as it does not afford defendant an adequate opportunity before trial to investigate and rebut the government's expert testimony. Fed. R. Crim. P. 16(a)(1)(G) states:

> At the defendant's request, the government must give to the
> defendant a written summary of any testimony that the government
> intends to use under Rules 702, 703, or 705 of the Federal Rules

**PRE-TRIAL ORDER-            10**

> of Evidence during its case-in-chief at trial. . . . The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Defendant's Motion For Discovery (Ct. Rec. 25) is **DENIED** as moot, with the proviso that the government will make its summary of anticipated expert testimony available to the defendant prior to trial and as soon as possible.

**Defendant's Motion To Disclose 404(b) and 609 Evidence (Ct. Rec. 23)**

Defendant requests the court to order the government to disclose any evidence it intends to introduce against him pursuant to Fed. R. Evid. 404(b) and 609, including criminal convictions, prior or subsequent criminal conduct, and/or "bad acts" which are not charged in the indictment, and whether the government intends to rely upon those rules to support the admission of evidence at trial.

In its response, the government says it has disclosed all evidence that might qualify as 404(b) or 609 evidence. Furthermore, it identifies the specific 404(b) and 609 evidence which it says it may introduce at trial and explains why it believes said evidence is admissible under those rules.

Defendant's Motion To Disclose (Ct. Rec. 23) is **DENIED** as moot, with admissibility determinations to be made at a later date.

**Defendant's Motion To Compel Grand Jury Transcripts (Ct. Rec. 21)**

Citing Fed. R. Crim. P. 6(e)(3)(E)(i), defendant moves the court to direct the government to prepare and produce the grand jury testimony of the government's witnesses and requests that he be provided with the grand jury transcripts in advance of trial. Rule 6(e) requires the defense to show a particularized need for early disclosure. In order to be entitled to early disclosure of grand jury transcripts, a "particularized need" must be established and the defense has the burden of showing disclosure is appropriate. *Dennis v. United States*, 384 U.S. 855, 870-72 (1966). The standards which the district court should follow in granting disclosure of grand jury

**PRE-TRIAL ORDER-** 11

1  transcripts are: (1) that the desired material will avoid a possible injustice; (2) that the need for
2  disclosure is greater than the need for continued secrecy; and (3) that only the relevant parts of
3  the transcripts should be disclosed. *United States v. Plummer*, 941 F.2d 799, 806 (9th Cir.
4  1991).

5      In its response brief, the government states that "no earlier than one week prior to trial of
6  this matter, the Government has no objection to disclosure of statements that witnesses the
7  Government will call at trial made at earlier grand jury proceedings concerning this case."
8  Accordingly, the court assumes these statements have already been disclosed to the defendant.
9  And indeed, the Jencks Act required that prior to witnesses testifying at the December 13
10 suppression hearing, their grand jury statements be disclosed to defendant. *United States v.*
11 *Bramble*, 103 F.3d 1475, 1479 (9th Cir. 1996).

12     Accordingly, defendant's Motion To Compel Grand Jury Transcripts (Ct. Rec. 21) is
13 **DENIED** as moot.

14     **IT IS SO ORDERED**. The District Executive is directed to enter this order and forward
15 copies to counsel.

16     **DATED** this  15th   of December, 2005.

18     s/ Alan A. McDonald
    ALAN A. McDONALD
19     Senior United States District Judge

**PRE-TRIAL ORDER-**          12